TAMAR LUBIN, APPELLANT, *v.* ISRAEL L. KUNIN, DIANA L. MOSS, JAY MOSS, JEFF STROMBERG, DR. NEVILLE POKROY, ESTHER POKROY, AND RONALD WINER, JOINTLY AND SEVERALLY, RESPONDENTS.

No. 32621

February 16, 2001                                         17 P.3d 422

*Killeen & Associates, P.C.,* and *Layne F. Barney,* Las Vegas, for Appellant.

*Law Office of V. Andrew Cass* and *Michael R. Hall,* Las Vegas, for Respondent Jeff Stromberg.

*Lionel Sawyer & Collins* and *Mark A. Solomon* and *Kevin D. Doty*, Las Vegas, for Respondents.

Before MAUPIN, C. J., ROSE and BECKER, JJ.

# OPINION

*Per Curiam:*

## SUMMARY

This case presents a defamation issue. A group of concerned parents, whose children attended a private school, allegedly defamed the school's director by distributing a handout that republished excerpts from a judicial complaint and commented upon the validity of the lawsuit. The district court dismissed the director's defamation action pursuant to NRCP 12(b)(5), finding that the handout was not defamatory as a matter of law. The director filed this timely appeal arguing that the statements in question were defamatory. We agree that the statements could be construed as defamatory and therefore conclude that the district court erred in dismissing this matter. Accordingly, we reverse the order of the district court and remand this matter for further proceedings.

## STATEMENT OF THE FACTS

Appellant Dr. Tamar Lubin was the director of the Hebrew Academy, a private school in Las Vegas, Nevada. On February 27, 1998, Lubin filed a complaint for defamation and libel against Israel L. Kunin, Diana L. Moss, Jay Moss, Jeff Stromberg, Dr. Neville Pokroy, Esther Pokroy, and Ronald Winer, alleged members of a group called the "Coalition of Parents" (hereinafter collectively "Parents"). According to the Parents' handouts, the group was comprised of "parents, teachers and citizens concerned with the education, safety and care of [the] children in the Hebrew Academy." The Parents believed that Lubin's mismanagement of the school contributed to the following: (1) high turnover of teachers; (2) failure to institute promised foreign language and fine arts classes; (3) an inadequate library system; (4) a less-than-nurturing environment; and (5) denial of parental input in school matters.

In the spring of 1996, the Parents allegedly defamed Lubin when they distributed various letters and handouts to parents, local newspapers, and public officials regarding Lubin and the problems at the Hebrew Academy. The handout at issue in this appeal described an April 1996 lawsuit filed against Lubin, the

Hebrew Academy Board of Trustees, and the Northwest Association of Schools and Colleges, which alleged child abuse, assault, battery, negligence, and other causes of action. The handout included the following paragraph:

> *This is not a frivolous law suit there is an abundance of evidence as well as eye-witnesses.* These parents never envisioned that anything of this nature could or would happen to their child. **IT DID!** It is time to protect our children.

(Emphasis in original.) Notably, the left-hand corner of the handout indicated that the handout was from Rachael Schwartz to Holly Buchanan. According to the Parents' motion to dismiss, Holly Buchanan is an employee of the Nevada Department of Education who was investigating the Hebrew Academy. Apparently, the handout was distributed prior to a June 1996 meeting of the Nevada Department of Education regarding the licensure and accreditation of the Hebrew Academy.

Lubin filed an action against the Parents alleging that the Parents' statements were false and defamatory and that, as a result, she was damaged in her profession. In response to Lubin's complaint alleging libel, the Parents filed a motion to dismiss under NRCP 12(b)(5), arguing that Lubin's complaint failed to state a claim upon which relief could be granted and that the statements made were merely nonactionable opinion or were protected by various privileges.

Following a hearing, the district court granted the Parents' motion to dismiss without prejudice, finding that "Lubin has failed to state a claim upon which relief can be granted because she failed to allege a false and defamatory statement of fact by the Parents concerning Lubin." Lubin then filed this timely appeal.

## DISCUSSION

Lubin contends that the district court erred in granting the Parents' motion to dismiss. Particularly, Lubin argues that her complaint alleged, inter alia, that the Parents had published a false and defamatory statement concerning her, and thus, because the district court should have accepted her allegations as true for purposes of the motion to dismiss, dismissal under NRCP 12(b)(5) was improper.[1] After reviewing this matter under the rigorous

---

[1]Our standard for review of an order granting a motion to dismiss is well recognized. This court will construe the pleadings liberally and draw every reasonable inference in favor of the non-moving party. *See Vacation Village v. Hitachi America,* 110 Nev. 481, 484, 874 P.2d 744, 746 (1994). Additionally, in our review of an order granting a motion to dismiss, we will accept all factual recitations in the complaint as true. *See id.* A motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff could not prove a set of facts that would entitle her to relief. *See id.*

standard of review for dismissal under NRCP 12(b)(5), we conclude that the district court erred in granting the Parents' motion to dismiss because the statements in question were capable of a defamatory construction.

> To create liability for defamation there must be:
> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.·

*PETA v. Bobby Berosini, Ltd.,* 111 Nev. 615, 619, 895 P.2d 1269, 1272 (1995) (quoting the Restatement (Second) of Torts: Elements Stated § 558 (1977)), *modified on other grounds by Las Vegas Downtown Redev. Agency v. Hecht,* 113 Nev. 644, 650, 940 P.2d 134, 138 (1997).

Because the district court granted the Parents' motion to dismiss upon finding that Lubin failed to allege a false and defamatory statement of fact, we need only analyze the first element of defamation.

I. *A false and defamatory statement*

"A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *K-Mart Corporation v. Washington,* 109 Nev. 1180, 1191, 866 P.2d 274, 281-82 (1993) (citing *Las Vegas Sun v. Franklin,* 74 Nev. 282, 287, 329 P.2d 867, 869 (1958)).[2] In reviewing an allegedly defamatory statement, "[t]he words must be reviewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 484, 851 P.2d 459, 463 (1993). Whether a statement is defamatory is generally a question of law; however, where a statement is " 'susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.' " *Posadas v. City of Reno,* 109 Nev. 448, 453,

---

[2]Regarding the falsity of the statements in question, Lubin also alleged in her complaint that the Parents' statements were false. The allegation is sufficient to overcome the NRCP 12(b)(5) motion with respect to this element. Furthermore, the jury generally determines whether the statements are false. *See Nevada Ind. Broadcasting v. Allen,* 99 Nev. 404, 413, 664 P.2d 337, 343 (1983).

851 P.2d 438, 442 (1993) (quoting *Branda v. Sanford,* 97 Nev. 643, 646, 637 P.2d 1223, 1225-26 (1981)).

In *Posadas,* we held that the defamatory nature of a statement that a police officer "lied under oath" was a question for the trier of fact because the statement was susceptible of different constructions, one of which was true—that the officer admitted under oath that he had lied to police officers—and another of which was defamatory—that when the officer lied he committed perjury, as he was under oath. 109 Nev. at 452-53, 851 P.2d at 442.

Like the statement in *Posadas,* the Parents' inclusion of the phrase "IT DID!" in the handout is susceptible of two interpretations: (1) that the child abuse did happen; or (2) that the lawsuit alleging child abuse was filed. Regarding the first possible interpretation, we conclude that it is defamatory because such a statement would clearly lower Lubin in the estimation of the community and excite derogatory and contemptuous opinions against her. This is especially true considering the fact that Lubin is a professional in the field of child education. Regarding the latter interpretation, the district court correctly found that merely publishing the fact that a lawsuit alleging child abuse was filed would not be actionable. We conclude, however, that whether the "IT DID!" language is defamatory is ultimately an issue for the trier of fact because this language is susceptible of two different interpretations, one of which is capable of defamatory construction.

## II.   *Statement of fact or opinion*

The Parents next argue that the statement was an evaluative opinion, rather than a defamatory statement of fact, because it merely expressed the Parents' opinion that the underlying lawsuit was not frivolous.

Statements of opinion are protected speech under the First Amendment of the United States Constitution and are not actionable at law. *See Nevada Ind. Broadcasting,* 99 Nev. at 410, 664 P.2d at 341-42. The test for whether a statement constitutes fact or opinion is: "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Id.* at 410, 664 P.2d at 342. So long as it is based on true and public information, an evaluative opinion conveys "the publisher's judgment as to the quality of another's behavior and, as such, it is not a statement of fact." *Berosini,* 111 Nev. at 624, 895 P.2d at 1275.

In certain contexts, however, a statement may be ambiguous or a "mixed type," which is "an opinion, which gives rise to the inference that the source has based the opinion on underlying, undisclosed defamatory facts." *Nevada Ind. Broadcasting,* 99 Nev. at 411, 664 P.2d at 342. In *Nevada Independent Broadcasting,* we offered an example illustrated by the Restatement (Second) of Torts: Expressions of Opinion Section 566 comment b (1977): "it may be actionable to state an opinion that plaintiff is a thief, if the statement is made in such a way as to imply the existence of information which would prove plaintiff to be a thief. In such situations, where a statement is ambiguous, the question of whether it is a fact or evaluative opinion is left to the jury." *Id.* at 411, 664 P.2d at 342.

Here, the Parents' statements are more akin to the "mixed-type" statement discussed in *Nevada Independent Broadcasting.* The Parents stated in their handout that the lawsuit was "not frivolous" and was "supported by abundant evidence." It is thus arguable that the Parents were implying by their statements the existence of factual information rather than opinion that would prove the allegations against Lubin.

Our conclusion on this issue is further supported by our holding in *Miller v. Jones,* 114 Nev. 1291, 970 P.2d 571 (1998). In *Miller,* we held that a campaign flier that included excerpts of a newspaper article, along with the statement that "[a] police detective accuses Miller of giving false information in a report concerning cocaine found in a car Miller was driving" was susceptible of defamatory construction. *Id.* at 1296-98, 970 P.2d at 575-76. In so holding, this court stated that:

> The effect of the reproductions of newspaper reports in the flier is to lend the contents of the flier an air of accuracy; the reports seem designed to indicate to the reader that points made by the flier are not merely [the publisher's] opinion, they are independently reported and verified facts.

*Id.* at 1297, 970 P.2d at 575. Like the inclusion of the newspaper reports in *Miller,* the inclusion of a reference to the court pleading indicating that Lubin was being sued for child abuse lent an "air of accuracy" to the Parents' later statement that this child abuse "DID!" happen.

Accordingly, we conclude that the Parents' handout contains "mixed-type" statements. Thus, the question of whether these statements constitute fact or opinion is one for the jury.

Because we conclude that the Parents' statements regarding the validity of the lawsuit against Lubin are susceptible of defamatory construction, and because we conclude that the statements may

constitute an opinion which implies that it is supported by undisclosed facts, we hold that the district court erred in finding, as a matter of law, that the statements were not false and defamatory. Therefore, the district court erred in granting the Parents' NRCP 12(b)(5) motion and dismissing Lubin's claim.[3]

## III. *Privileges*

Finally, the Parents argue that the fair report and common interest privileges protect their statements. A statement that is capable of defamatory construction is not actionable if the communication is privileged. We observe, however, that privileges are defenses to a defamation claim and, therefore, the defendant has the initial burden of properly alleging the privilege and then of proving the allegations at trial. *See Simpson v. Mars Inc.,* 113 Nev. 188, 191, 929 P.2d 966, 968 (1997) (recognizing that the privileges raised were "defenses, not part of the prima facie case"); *see generally* Restatement (Second) of Torts: Defenses to Actions for Defamation Ch. 25 and Burden of Proof § 613 (1977). Nevertheless, we shall consider two privileges raised in order to guide the court below.

### A. *Fair report privilege*

The Parents contend that they are absolutely immune from liability because their statements refer to other judicial proceedings then in progress. We recently recognized that the "fair, accurate, and impartial" reporting of judicial proceedings is privileged and nonactionable, thus affirming the policy that Nevada citizens have a right to know what transpires in public and official legal proceedings. *See Sahara Gaming v. Culinary Workers,* 115 Nev. 212, 215, 984 P.2d 164, 166 (1999). Invocation of the privilege thus requires the district court to determine whether the Parents' statements were fair, accurate, and impartial. *See Dorsey v. National Enquirer, Inc.,* 973 F.2d 1431, 1435 (9th Cir. 1992) (citing California law for the proposition that the question of whether a magazine's account is a "fair and true" report is one of law, so

---

[3]Addressing the fault element of the prima facie showing of defamation, respondent Jeff Stromberg argues without merit that Lubin is a public figure and as such that Lubin must show, by clear and convincing evidence, that the Parents acted with actual malice. This issue was not, however, raised below, and we need not consider it on appeal. *See Diamond Enters., Inc. v. Lau,* 113 Nev. 1376, 1378, 951 P.2d 73, 74 (1997) ("It is well established that arguments raised for the first time on appeal need not be considered by this court."). In any event, Lubin is not required to *establish* anything by any degree of evidence to overcome the motion to dismiss under NRCP 12(b)(5); rather, she is simply required to properly *allege* a prima facie case of defamation.

long as "there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report").

After reviewing the handout in question, we observe that the Parents arguably went beyond fair, accurate, and impartial reporting of the child abuse complaint by presenting a one-sided view of the action. While *Sahara Gaming* allows a party to report preliminary judicial proceedings from a fair and neutral stance, a party may not don itself with the judge's mantle, crack the gavel, and publish a verdict through its "fair report." *See Sahara Gaming*, 115 Nev. at 215, 984 P.2d at 166 ("Opinions must be left to the editorial pages or editorial segments of television broadcasts."). Accordingly, the fair report privilege may be determined to be inapplicable here. *Cf. Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 271-72 (7th Cir. 1983) (holding that the fair report privilege does not apply to a reporter's summary of a government report where the summary unfairly portrayed the gist of the report in a way that a jury could "conclude that the summary carried a greater sting and was therefore unfair"); *Street v. National Broadcasting Co.*, 645 F.2d 1227, 1233 (6th Cir. 1981) (concluding that a movie purporting to quote and paraphrase a trial is not fair and accurate where "[t]he element of balance and neutrality is missing").

### B. *Common interest privilege*

The Parents also assert that their statements are protected by the common interest privilege. The common interest privilege is conditional and "exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty." *Circus Circus Hotels v. Witherspoon*, 99 Nev. 56, 62, 657 P.2d 101, 105 (1983); *see also Bank of America Nevada v. Bourdeau*, 115 Nev. 263, 266-67, 982 P.2d 474, 476 (1999). Whether the common interest privilege applies is a question of law for the court. *See Circus Circus Hotels*, 99 Nev. at 62, 657 P.2d at 105. At the NRCP 12(b)(5) stage, however, the Parents have not alleged the privilege by answer, let alone established facts to show that the privilege applies. If the district court determines that the privilege is applicable, the action for defamation will be presented "to the jury only if there is sufficient evidence for the jury reasonably to infer that the publication was made with malice in fact." *Id.*

## CONCLUSION

We conclude that the Parents' statements regarding Lubin are capable of a defamatory construction and might not be an evaluative opinion. Consequently, an issue of fact exists as to whether the statements actually constitute defamation. Therefore, the district court erred in dismissing Lubin's complaint under NRCP 12(b)(5). Furthermore, the privileges raised by the Parents are defenses that should not be considered on an NRCP 12(b)(5) challenge but may or may not be applicable to the case when properly raised and fully presented to the district court. Accordingly, we reverse the district court's order and remand this matter for further proceedings.